# CHARLESTON.

## FORD V. BALL.

Submitted September 14, 1915.   Decided September 28, 1915.

1. LANDLORD AND TENANT—*Lease Construction—Covenant of Lessor—* *"Grant"—"Demise".*

    The words "grant" and "demise" in a lease, if unrestrained, impose upon the lessor a covenant that he has good title to the premises and right to lease them. (p. 665).

2. SAME—*Lease—Breach of Covenant.*

    If the lessor in such a lease holds the title only as trustee, without power under the trust to execute the lease, and the lessee has notice of the trust, the implied covenant is broken the moment the lease is executed. (p. 665).

3. TRUSTS—*Resulting Trust—Beneficiary—Right to Elect.*

    The beneficiary of a resulting trust may elect, as against one who has acquired an interest in the property, with notice of the trust, to take the title in the condition in which it was obtained by his trustee. (p. 665).

4. LANDLORD AND TENANT—*Breach of Covenants—Liability of Maker.*

    One who signs, seals and acknowledges a lease, without having been made a party thereto by any terms found in its caption or body, does not make the covenants contained in it and is not liable for breaches thereof. (p. 667).

5. JUSTICES OF THE PEACE—*Jurisdiction—Determination—Title to Realty.*

    A justice of the peace is not required to determine whether a question of title will collaterally arise in an action of which he would have full jurisdiction but for such question, if the objecting party does not file an affidavit setting forth facts showing such question will arise. (p. 667).

Error to Circuit Court, Doddridge County.

Action by W. Ford against Z. T. Ball. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*W. S. Stuart* and *H. L. Hammond,* for plaintiff in error.

*J. Ramsey* and *G. W. Farr,* for defendant in error.

POFFENBARGER, JUDGE:

The judgment for $120.00 recovered in the circuit court of Doddridge County, on an appeal from the judgment of a justice, and complained of here, is the amount of the bonus paid for a lease of certain lands for oil and gas purposes.

The legal title to the premises in question was held by Z. T. Ball, the defendant, as guardian for two infants, Cleveland Ball and John Ball, the former of whom, having attained his majority, before the date of the lease, though not designated as lessor in the caption thereof, affixed his signature and seal to it and received one-half of the bonus. Without the requisite authority or direction from a court of equity, the guardian, on the 27th day of January, 1909, invested $2200.00 of the money of his wards in the leased land, which seems then to have been under a prior lease for oil and gas purposes. Stout and wife, the vendors, conveyed it to him as guardian of Cleveland Ball and John Ball, "to have and to hold in trust" for them, until the 19th day of April, 1911, the date on which the younger ward would become 21 years old. A clause in the deed excepted the coal in the tract of land, which had been previously conveyed to another party, and reserved to the grantors one-fourth of the oil, defining the reservation as one-fourth of what is known as the royalty, or one-thirty-second of the oil and also one-fourth of the proceeds of all the gas. That clause is followed by this provision: "Full right to lease said property by second *part* or his successors, is hereby granted in this deed when present lease expires, retaining to the parties herein named their proper and just interests." About two months after the date of the lease, Ford endeavored to get Ball to correct what he conceived to be a defect in his title by procurement of a judicial sale or lease of John Ball's interest. To this end, he caused a notice of an application under the statute, for authority to make

such sale or lease, to be prepared, and requested the guardian to sign it and prosecute the proceedings, but he declined to do so, and, about four months later, this action was brought in a justice's court. In so doing, he virtually rescinded or abandoned the lease, as there was then a right of forfeiture in the lessor for non-payment of delay money, due about June 2, 1910. Failing in the justice's court, he took an appeal to the circuit court.

No very solid basis or ground of recovery is stated either in the pleadings or the evidence. Ball's mere assertion of right to lease the land, with knowledge of lack of such authority, on Ford's part, does not argue very strongly in the latter's favor. His payment of the money, knowing Ball had no right to it, without more, would be recklessness on his part, upon which the law might well frown. To obtain relief, he should show a breach of duty by the defendant, not superinduced nor participated in by himself. It is unnecessary, to say whether purchase money paid, with knowledge of lack of title in the vendor, can be recovered. The doctrine of voluntary payment may not apply, payment and purchase not being synonomous by any means.

Firm ground of action is found in a covenant the defendant has broken. In the letting clause, the words "grant" and "demise" appear, and, in using them, the lessor impliedly covenanted that he had good title to the premises and right to lease them. *Harms* v. *McCormick*, 132 Ill. 104; *Crouch* v. *Fowle*, 9 N. H. 219; *Grannis and Clark* v. *Delvin*, 8 Cow. (N. Y.) 36; *Stott* v. *Rutherford*, 92 U. S. 107; Tiffany Land. & Ten. p. 540, sec. 80.

The land having been purchased in part with money of John Ball, an infant, the doctrine of equitable conversion does not relieve from the defect of title in the defendant. He holds one-half of it as trustee for John Ball, and a purchaser of the title would take it subject to the trust. "It is a universal rule, that if a man purchases property of a trustee, with notice of the trust, he shall be charged with the same trust, in respect to the property, as the trustee from whom he purchased." Perry on Trusts, sec. 217, sustained by multitudinous decisions cited. The beneficiary could elect to take the land as

of the date of the purchase and free from any subsequent interest therein acquired with notice of the trust.

Though an oil and gas lease is not a sale of the land nor of the oil and gas in place, it confers right to sever and take away the oil and gas and is worthless without incidental right to do so. Because it carries such right a guardian or mere holder of the title as trustee for another cannot execute a valid oil or gas lease. Under one so executed, the lessee is not entitled to sever and carry them away. To the extent of that right, the lessee in a valid lease is a purchaser of an estate in the land, though it be an incorporeal one. Clearly, therefore, the election of the infant to take the land, after execution of the lease, would destroy it and, for that reason, the lessor had not good title and the covenant was broken at the date of the lease.

Stout, the grantor, may have had power to reserve to himself right to have the land leased and developed so as to give him the benefit of his reservation of one-fourth of the royalty, and to make such right a part of the trust, but he did not do so. He did not obligate the trustee to lease the tract. He merely granted a privilege which, in terms, does not extend beyond his own reserved interest in the land. The guardian, in changing his status from guardian to trustee, could, by his own act, add nothing to his authority. This principle is well illustrated in *Richardson* v. *Aiken,* 104 Pa. St. 567, and *Griffith* v. *Eisenberg,* 215 Pa. St. 182.

In *Gaffney* v. *Stowers,* 73 W. Va. 566, invoked as authority for the position of the defendant, the covenant under consideration was the implied covenant for quiet enjoyment, which differs materially from the one involved here. Eviction, or the equivalent thereof, seems to be essential to a breach of the covenant for quiet enjoyment, wherefore mere lack of title does not suffice, for a lessor without title may be able to put the lessee in possession and maintain him there unmolested, and, in that case, the want of title would be neither an excuse for non-payment of the rent nor a basis for an action for damages. *Gaffney* v. *Stowers,* cited; *Knotts* v. *McGregor,* 47 W. Va. 420.

Nothing in the oral evidence introduced or offered has any tendency to qualify or nullify the implied covenant of title,

if such evidence can be regarded as admissible for that purpose, a question not decided. Though the lessee knew the state of the title, he took a lease containing words carrying the covenant and there is a presumption of intent on his part to rely upon them. If it is rebuttable, no evidence tending to overthrow it was adduced. Such as was admitted and offered only shows Ford sought and obtained the lease, with knowledge of the condition of the title and that other persons wanted it. These facts do not in themselves qualify the meaning of the words found in the lease.

Sufficient grounds were not laid for the exceptions to the action of the court, in the rejection of oral evidence offered, if it was admissible, no indication of the nature of the answers to the questions having been given. Nor was the right of cross-examination unduly limited, the restraint thereon going only to immaterial matters.

As the court adhered to the principles herein stated, in its rulings upon instructions, the assignments of error relating to them are not well taken; and enough has been said to show the correctness of its ruling on the motion to exclude the evidence.

It was proper to sue Z. T. Ball alone, for he alone covenanted. Cleveland Ball merely affixed his signature and seal to the lease and acknowledged it. He is not mentioned nor described in the caption as a lessor. The instrument is designated an agreement made and entered into by Z. T. Ball guardian for the infant children of Annie Ball, to-wit, Cleveland Ball and John Ball, as "parties" of the first part and W. F. Ford, party of the second part. The words of covenant are not Cleveland Ball's. His conduct may have been sufficient to ratify the act of Z. T. Ball in leasing the land, but he neither granted, demised nor covenanted. *Laughlin Bros.* v. *Fream,* 14 W. Va. 322; *Payne* v. *Parker,* 10 Me. 178; *Bank* v. *Rice,* 4 How. 225; *Harrison* v. *Simmons,* 55 Ala. 510; Jones, R. Prop. Conv., sec. 104. Z. T. Ball alone broke the covenant and is severally liable, notwithstanding he paid half of the bonus money to Cleveland Ball.

The affidavit filed in resistance of the jurisdiction of the justice, on the ground of the existence of a question of title, stated no facts calling for his judgment as to whether there

was such a question, wherefore it was wholly insufficient. Justices are not absolutely forbidden to try such questions, when drawn into cases within their jurisdiction. The statute merely enables a party to prevent it by pursuit of a prescribed method. Code, ch. 50, sec. 50, ser. sec. 2604, clause XII. Nothing in the record calls for opinion here as to the existence of such a question.

Seeing no error in the judgment, we affirm it.

*Affirmed.*