# CHARLESTON.

PYLES, REC'R. *v.* CARNEY *et als.*

Submitted November 11, 1919. Decided November 18, 1919.

1. EQUITY—*General Demurrer to Bill—Good Cause for Relief— Proper Parties.*

    Where a bill avers good cause for relief and shows no lack of proper parties, a general demurrer thereto should be overruled; and a demurrer is none the less general because it assigns a number of distinct grounds therefor. (p. 160).

2. EXECUTORS AND ADMINISTRATORS—*Parties to Suit—Liability of Stockholders.*

    In a suit by a receiver of an insolvent bank to enforce the individual liability of the stockholders, the personal representatives of all stockholders who were resident at their decease, whose estates are liable for any part of the liabilities accruing against the bank, should be made parties to the bill. (p. 162).

3. BANKS AND BANKING—*Receiver's Suit Against Stockholders.*

    A receiver of an insolvent bank, appointed by the banking commissioner with the advice and consent of the governor, may maintain a suit in his own name against stockholders of the

bank to enforce their individual liability for the benefit of creditors, when ordered so to do by the banking commissioner. (p. 163).

4.  LIMITATION OF ACTIONS—*Demurrer.*

The statute of limitations may be raised by demurrer to a bill of equity.  (p. 163),

5.  BANKS AND BANKING—*Limitation of Actions—Liability of Stockholders of Insolvent Bank.*

The individual liability of a stockholder of an insolvent bank is not a primary but a secondary liability, in the nature of a guaranty, and the statute of limitations does not begin to run against the enforcement thereof until the necessity for payment of the same is ascertained and the stockholder so notified, which must be done within a reasonable time; section 12, chapter 104, then applies the five year limitation to the right of action.  (p. 163).

6.  SAME—*Liquidation of Stockholder's Liability.*

Such liability is unliquidated until the amount thereof is ascertained in some manner provided by law, and the stockholder required to pay the same; and from that time it became a liquidated demand and bears interest.  (p. 163).

7.  SAME—*Liability of Stockholders of Insolvent Bank.*

No stockholder of an insolvent bank, nor any number of holders, at different times, of the same shares of stock are liable individually or in the aggregate for more than 100 per cent of the par value thereof; and in case any holder of such shares of stock has paid the full amount of the liability on account thereof, the receiver has no right to demand any further payment from any other holder of such stock.  (p. 163).

Certified questions from Circuit Court, Wetzel County.

Bill by B. A. Pyles, special receiver of the Exchange Bank of Littleton, against S. A. Carney and others.  Separate demurrers by part of defendants to second amended bill sustained in part and overruled in part, and questions certified by Circuit Court.

*Affirmed in part.  Reversed in part.  Certified back.*

*H. H. Rose,* for plaintiff.

*McCamic & Clarke* and *Chas. A. Showacre,* for defendants.

WILLIAMS, JUDGE:

Upon sustaining in part and overruling in part the separate

demurrers of a number of the defendants to the second amended bill filed by B. A. Pyles, special receiver of the Exchange Bank of Littleton, against a number of its stockholders, for the purpose of enforcing their individual liability for double the amount of their stock, the same being alleged to be necessary to pay the creditors of the insolvent bank, the court has certified for our decision a number of questions. Many of them, however, did not, and clearly are not such as could arise on the demurrer, but can only arise on issues of fact. A copy of the written demurrer of defendant A. J. Jones, of the second amended bill and exhibits filed therewith and of the court's order ruling upon the demurrer constitute the record now before us. The demurrer is general, although it specifies numerous grounds, and if the bill states a good cause for relief in any particular and is not lacking in proper parties, the demurrer should be overruled. *Trough* v. *Trough,* 59 W. Va. 464, and *Wheeling* v. *Telephone Co.,* 82 W. Va. 208.

The bill purports to make parties all living, resident and solvent persons, who are now, or have been at any time in the past, stockholders in the bank, when any part of its present liabilities arose, for which the bill seeks to hold them liable, avers when they acquired the stock and how many shares and the par value thereof, and, in case they transferred any or all of them, when, to whom and how many shares were transferred, and if their assignees again transferred any of them, to whom and how many shares, thus giving a complete history of the ownership and various transfers of all the stock in the bank from its incorporation in March, 1903, under the laws of West Virginia, as a bank of discount and deposit, down to July 8, 1913, when its doors were closed by the commissioner of banking and it ceased to do business; and avers that on the date last named plaintiff was appointed receiver for it by the commissioner of banking, acting with the advice and consent of the Governor; that he qualified in the manner required by law and took charge of its assets and has endeavored to reduce them to cash, and has in fact so reduced about all the available assets; that by virtue of an order of the banking commissioner, made after an inspection of the receiver's accounts, he has paid three dividends, one of 40%, an-

other of 25%, and a third of 12½% to the bank's creditors, after first paying $686.22 preferred claims; that much of the assets, amounting to $19,505.65, are worthless, exhibiting a list thereof with the bill; that after applying all available assets, including what is yet remaining in his hands, the funds will fall short of the bank's liabilities by something over $23,000. It avers the captalization of the bank to be $25,000, divided into shares of $100 each, all of which was subscribed and paid in full except $2,800, which was subscribed, but not paid. It is thus apparent that, in order to pay its creditors in full, if even that will suffice, it is necessary to collect from the stockholders, on account of their individual liability, an amount equal to the par value of their stock.

The bill avers that F. A. Blum was at one time the owner of thirty-two shares, twenty-seven of which he acquired from one J. F. Gallagher on the 11th of June, 1910, and five on the same date from one Fred O. Funk, all of which he held until the 21st day of June, 1910, at which time he assigned them to one Joanna Blum, who held and owned said shares from the 21st to the 25th day of June, 1910, when she transferred sixteen of them to the defendant A. J. Jones, and sixteen to the defendant Friend Cox; that both F. A. Blum and Joanna Blum have departed this life, and no personal representative has ever been appointed in this state to represent either of their estates. It is not averred that, at the time of their death, they were non-residents, and the fact that no personal representative has been appointed for either of them is not a legal excuse for failing to bring their interests into the suit. The receiver should have had their estates committed to the sheriff of the county for administration, as provided by the statute. Section 10, chapter 85, Code. This the receiver, as representing the bank's creditors, had the right to do and should have done. The double liability of the stockholders is an asset in the hands of the receiver to be administered for the benefit of the creditors. *Benedum* v. *First Citizens Bank et al.,* 72 W. Va. 124; *Clark, Trustee* v. *Bank of Union.* 72 W. Va. 491; and *Dunn* v. *Bank of Union,* 74 W. Va. 594. For the reason that the Blum estates were not before the court the demurrer was properly sustained. All resident stockholders, if living, or their personal repre-

sentatives in case of their death, who are liable to any creditor
of the bank, should be made parties, unless their insolvency or
some other good reason is alleged for not making them parties.
It is a familiar rule of equity practice, needing no dis-
cussion or citation of authority, that all persons to be affected
by the court's decree or interested in the proceedings should be
made parties to the bill. This rule, of course, includes the
representatives of those parties who are dead. The reason
for applying that rule here is apparent because of the apportion-
ment of liability necessary to be made among the several owners,
at different times, of some or all of the same shares of stock,
during which time distinct portions of the bank's liabilities sev-
erally arose. This adjustment should be made and the amount
each stockholder should pay determined in one suit.

But the court also held that the right to enforce the individual
liability of the stockholders was barred as to all the bank's lia-
bilities, on which a right to sue it had accrued more than five
years before the commencement of this suit. The bar of the
statute is assigned as one of the grounds of demurrer. In
equity practice the statute of limitations and laches
may be raised by demurrer. *Thompson* v. *Whitaker Iron
Co.,* 41 W. Va. 574; *Lambert* v. *Ensign Mfg. Co.,* 42 W. Va.
813; and *Bragg* v. *Wiseman,* 55 W. Va. 330. But the individ-
ual liability of a stockholder to the bank's creditors for an
amount equal to the par value of his stock is not a primary but
a secondary liability, being in the nature of a guaranty, and
limitation does not begin to run against it until the necessity for
payment of the same is ascertained and the stockholder so no-
tified, which must be done within a reasonable time. 3 Michie
on Banks & Banking, 881; *Flynn* v. *Bank,* 104 Me. 141;
*Terry* v. *Tubman,* 92 U. S. 156; *McClain* v. *Rankin,* 107 U. S.
154; and *Long* v. *Bank,* 90 N. C. 405. Section 12, chapter 104
of the Code, then applies the five year limitation.

The bill avers that the bank was closed on July 8th, 1913, and
the present suit was brought in March, 1918, some months be-
fore the limitation had run. Hence the court erred in respect to
the second reason given for sustaining the demurrer.

Read in connection with the exhibits therewith filed the bill
shows that it is necessary for the stockholders to respond to the

full amount of their double liability, and that even in that event there will not be sufficient funds to discharge all liabilties. As soon as it was ascertained that payment of their individual liability was necessary to satisfy the creditors, the banking commissioner ordered the receiver to notify them to pay the same and he did so. The liability then became a liquidated demand and began to bear interest from that date. See authorities above cited.

The bill avers that certain of the stockholders responded to the call of the receiver and have already paid 100% of the par value of the stock held by them. In those instances the receiver has no right to demand payment from any other person who may have been at any time a holder of the same shares of stock, as the purpose of the Constitution, Art. 11, Sec. 6, and the statute, Sec. 78a (3), Ch. 54, in those cases is fully met. It was never the purpose of the legislature or the framers of the Constitution to make the aggregate amount of the individual liability of all the stockholders more than the par value of all the capital stock. This liability is to be apportioned, where the same stock has been held by different persons at different times, according to liabilities accruing while they were owners thereof. In other words, only $22,200 of the stock having been subscribed and paid for (the remaining shares although subscribed never having been paid for nor assigned, and the original subscriber being insolvent) the receiver has no right to recover from the stockholders more than $22,200.

The statute, Sec. 81a (7), Ch. 54, authorizes the commissioner of banking to enforce double liability of stockholders by a suit instituted either in his own name or the name of a receiver appointed by him. In such suit a non-resident stockholder may be omitted; as the purpose of the suit is to get a money decree, and in the case of a non-resident served only by order of publication, or personally served with summons out of the state, would be unavailing. The statute above cited provides that non-resident stockholders may be sued either where they reside or where service of process may be had upon them.

The bill on its face shows that many bad loans were made by the bank, some for large amounts, and it is insisted in brief of counsel that the bill is bad because it thus appears that the

receiver should have sued the directors for the mismanagement of the bank, before calling on the stockholders for their double liability.   That is a matter which can not arise upon the demurrer, the receiver may have some good reason for not suing the directors for negligence.   The bill does not even allege who the directors were. The stockholders themselves or the creditors have the right to sue the directors, if they be so advised.   *Benedum* v. *First Citizens Bank, supra;* and *Clark, Trustee* v. *Bank of Union, supra.*

For the reasons herein given the court's ruling upon the demurrer is sustained in part and overruled in part, and this decision will be certified to the Circuit Court of Wetzel County.

*Affirmed in part.   Reversed in part.   Certified back.*